UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JORGE DONALDO ALLAICA
YANCHALIQUIN,
                                                              1:23-cv-504 (BKS/CFH)

                                   Plaintiff,

v.

CHUQUI BUILDERS CORP. and
MANUEL CHUQUI,

                                 Defendants.
_____

**Appearances:**

*For Plaintiff:*
Daniel I. Schlade
Justicia Laboral, LLC
6232 North Pulaski Road, Suite 300
Chicago, IL 60646

**Hon. Brenda K. Sannes, Chief United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I.    INTRODUCTION

Plaintiff Jorge Donaldo Allaica Yanchaliquin brought this action against Defendants Chuqui Builders Corp. and Manuel Chuqui, alleging violations of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"), and the New York Labor Law ("NYLL"). (Dkt. No. 1). Defendants have not answered the Complaint or otherwise appeared in this action. Presently before the Court is Plaintiff's Motion for Default Judgment against Defendants under Rule 55(b) of the Federal Rules of Civil Procedure. (Dkt. No. 12). For the reasons that follow, Plaintiff's Motion is granted in part and the Complaint is dismissed in part.

II.     FACTS[1]

Plaintiff is a resident of Albany, New York, and former employee of Defendants. (Dkt. No. 1, ¶¶ 2, 11–12). Defendant Chuqui Builders is a business located, headquartered, and conducting business in Albany, New York, (*id.* ¶ 3), owned and managed by Defendant Manuel Chuqui, (*id.* ¶ 4).

Defendants are "an enterprise engaged in commerce or in the production of goods for commerce" under 29 U.S.C. § 203(s)(1)(A)(i)–(ii) "because they have annual gross volume of sales made or business done of at least $500,000; and because they are engaged in interstate commerce or in the production of goods for interstate commerce." (*Id.* ¶ 5). Defendant Chuqui Builders is an "employer" under § 203 of the FLSA "because it is a privately owned for-profit entity." (*Id.* ¶ 8). Defendant Manuel Chuqui is an "employer" under § 203 of the FLSA "because: (1) they were Plaintiff's head 'boss' at [Defendant] Chuqui Builders []; (2) they had the power to hire and fire the employees, including Plaintiff; (3) they supervised and controlled Plaintiff's work schedules and conditions of employment; (4) they determined the rate and method of payment for employees; and (5) they maintained employment records." (*Id.* ¶ 9).

In 2022, Plaintiff was employed by Defendants as a roof builder for approximately six months and paid $260 per day ($20 per hour)—a rate "not based on the number of jobs performed or completed, nor . . . on the quality or efficiency of [Plaintiff's] performance." (*Id.* ¶¶ 2, 11–12, 15–16). "Throughout . . . Plaintiff's employment with Defendants, Defendants regularly scheduled and directed Plaintiff to work in excess of forty [] hours per week." (*Id.*

---

[1] The facts are taken from the Complaint. (Dkt. No. 1). Because Defendants have failed to respond to the Complaint, the well-pleaded allegations therein are deemed admitted and assumed to be true for purposes of this Motion. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992).

¶ 17). Indeed, "Plaintiff's general schedule with Defendants required Plaintiff to work on average 72–82 hours per week." (*Id.* ¶ 13).

However, Defendants did not pay Plaintiff at a rate "not less than one and a half [] times the regular rate" for hours worked in excess of forty per week. (*Id.* ¶ 18). Moreover, Defendants "failed to keep proper time records tracking Plaintiff's time worked; and Defendants' failure and refusal to pay Plaintiff overtime wages for hours worked in excess of forty [] hours per week was a willful violation of the FLSA. Defendant [sic] knew or should have known that Plaintiff was entitled to time-and-a-half wages for hours worked in excess of [forty] per week, and thus its conduct was willful." (*Id.* ¶ 19). Additionally, Defendants "unlawfully failed to issue accurate wage notices" and "wage statements." (*Id.* ¶¶ 29, 33).

## III.   DISCUSSION

### A.   Procedural Requirements

"Rule 55 of the Federal Rules of Civil Procedure provides a two-step process for obtaining a default judgment." *Priestley v. Headminder, Inc.*, 647 F.3d 497, 504 (2d Cir. 2011). First, under Rule 55(a), the plaintiff must obtain a clerk's entry of default. Fed. R. Civ. P. 55(a) ("When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."); *see also* Local Rule 55.1 (requiring a party seeking a clerk's entry of default to "submit an affidavit showing that (1) the party against whom it seeks a judgment . . . is not an infant, in the military, or an incompetent person (2) a party against whom it seeks a judgment for affirmative relief has failed to plead or otherwise defend the action . . . and (3) it has properly served the pleading to which the opposing party has not responded."). Second, under Rule 55(b)(2), the plaintiff must "apply to the court for entry of a default judgment." *Priestley*, 647 F.3d at 505; *see also* Local Rule 55.2(b) ("A party shall accompany a motion to the Court for the

3

entry of a default judgment, pursuant to Fed. R. Civ. P. 55(b)(2), with a clerk's certificate of entry of default . . . a proposed form of default judgment, and a copy of the pleading to which no response has been made.").

Here, Plaintiff has complied with the procedural requirements for obtaining a default judgment. On June 7, 2023, Plaintiff requested a clerk's entry of default under Federal Rule of Civil Procedure 55(a), and, as required by Local Rule 55.1, Plaintiff submitted an affidavit affirming that Defendants (1) are not infants, in the military, or incompetent persons; (2) were properly served; and (3) have defaulted in this action. (Dkt. No. 9-1, at 1–2). Plaintiff properly served Defendant Chuqui Builders in accordance with Federal Rule of Civil Procedure 4(h)(1)(B) by serving the Complaint on an authorized agent for Defendant Chuqui Builders. (Dkt. No. 6). Plaintiff properly served Defendant Manuel Chuqui in accordance with Federal Rule of Civil Procedure 4(e)(2)(B) by leaving a copy of the Complaint at Defendant Manuel Chuqui's dwelling or usual place of abode with someone of suitable age and discretion who resides there—namely, Defendant Manuel Chuqui's wife. (Dkt. No. 5). On June 8, 2023, Plaintiff received a clerk's entry of default against Defendants. (Dkt. No. 10). And, on June 23, 2023, Plaintiff moved for a default judgment against Defendants under Federal Rule of Civil Procedure 55(b)(2) and Local Rule 55.2(b). (Dkt. No. 12). Therefore, as the procedural requirements for entry of a default judgment are met, the Court will address liability.

### B. Liability

By failing to answer the Complaint or oppose this motion, Defendants are deemed to have admitted the well-pleaded factual allegations in the Complaint. *See Greyhound Exhibitgroup, Inc.*, 973 F.2d at 158 ("[A] party's default is deemed to constitute a concession of all well pleaded allegations of liability."); *Rolex Watch, U.S.A., Inc. v. Pharel*, No. 09-cv-4810, 2011 WL 1131401, at *2, 2011 U.S. Dist. LEXIS 32249, at *5–6 (E.D.N.Y. Mar. 11, 2011) ("In

considering a motion for default judgment, the court will treat the well-pleaded factual allegations of the complaint as true, and the court will then analyze those facts for their sufficiency to state a claim."). However, "a pleading's legal conclusions are not assumed to be true." *Lelchook v. Islamic Republic of Iran*, 393 F. Supp. 3d 261, 265 (E.D.N.Y. 2019) (citation omitted). Before entering default judgment, the Court must review the complaint to determine whether Plaintiff has stated a valid claim for relief. *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009); *Telequip Corp. v. Change Exch.*, No. 01-cv-1748, 2004 WL 1739545, at *1, 2004 U.S. Dist. LEXIS 14892, at *3 (N.D.N.Y. Aug. 3, 2004). The Court "need not agree that the alleged facts constitute a valid cause of action." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011) (quoting *Au Bon Pain Corp v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981)).

 1. **Failure to Pay Overtime Wages (First and Second Causes of Action)**

Plaintiff claims Defendants failed to pay him overtime wages in violation of the FLSA and NYLL. (Dkt. No. 1). The FLSA was enacted to eliminate "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers." 29 U.S.C. § 202(a). The FLSA's overtime wage provisions require employers to pay employees for hours worked in excess of forty per week "at a rate not less than one and one-half times the regular rate at which [they are] employed," 29 U.S.C. § 207(a)(1), and provides a private right of action enabling employees to recover unlawfully denied overtime wages and "an additional equal amount as liquidated damages," 29 U.S.C. § 216(b). To establish liability under the FLSA, "a plaintiff must show that he or she is an 'employee' of the defendant within the meaning of the FLSA" and that the defendant is an employer subject to the FLSA. *Fermin v. Las Delicias Peruanas Restaurant, Inc.*, 93 F. Supp. 3d 19, 31–32 (E.D.N.Y. 2015) (quoting 29 U.S.C. § 207(a); *Chen v. Major League Baseball*, 6 F. Supp. 3d 449, 453–54

(S.D.N.Y. 2014)). Furthermore, "a plaintiff must prove that he performed work for which he was not properly compensated, and that the employer had actual or constructive knowledge of that work." *Kuebel v. Black & Decker*, 643 F.3d 352, 363 (2d Cir. 2011) (citations and footnote omitted).

The FLSA defines an "employee" as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). Plaintiff alleges that Defendants employed him for approximately six months in 2022. (Dkt. No. 1, ¶¶ 11–12). He performed roof-building duties and was paid wages on a biweekly basis. (*Id.* ¶¶ 12, 14) Accordingly, "for purposes of this default, [Plaintiff] qualifies as an 'employee' under the FLSA." *Garcia v. Badyna*, No. 13-cv-4021, 2014 U.S. Dist. LEXIS 134089, at *12 (E.D.N.Y. Sept. 4, 2014), *report and recommendation adopted*, 2014 WL 4728287, 2014 U.S. Dist. LEXIS 133722 (E.D.N.Y. Sept. 23, 2014).

An employer is subject to the FLSA's overtime provisions if it is an "enterprise engaged in commerce." 29 U.S.C. § 207(a). An "enterprise engaged in commerce" is an enterprise that "has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person" and that has an "annual gross volume of sales made or business done . . . [of] not less than $500,000." 29 U.S.C. § 203(s)(1)(A)(i)–(ii). Plaintiff restates this statutory definition in the Complaint without further detail. (Dkt. No. 1, ¶ 5 (reciting 29 U.S.C. § 203(s)(1)(A)(i)–(ii)'s language)). While this bare recitation, amounting to a legal conclusion, is not automatically assumed to be true, in this context, the Court finds it sufficient. In *Huerta v. Victoria Bakery*, for example, the court considered whether similar allegations sufficed to show that a bakery was an "enterprise engaged in commerce" in an FLSA action in default posture. No. 10-cv-4754, 2012 WL 1107655, at *2, 2012 U.S. Dist. LEXIS

6

46407, at *6 (E.D.N.Y. Mar. 30, 2012). The court concluded that the *Huerta* complaint provided a sufficient basis

> for inferring the requisite interstate commerce connection under the sensible approach adopted by other judges in this district[] because [t]he complaint allege[d] that [the] plaintiffs . . . were employed as breadmakers in a Brooklyn-based bakery with over half a million dollars in annual sales[] [and] [i]t is inconceivable that some of the bread-making materials used by [the] plaintiffs did not originate out of state or that the bakery did not sell its products outside the State of New York.

*Id.* Similarly, here, it is reasonable to infer that the goods necessary to provide roof building services—and generate over $500,000 in annual sales—do not come exclusively from New York State. (Dkt. No. 1, ¶ 5, 12); *see, e.g., Archie v. Grand Centr. P'ship, Inc.*, 997 F. Supp. 504, 530 (S.D.N.Y. 1998) (concluding in an FLSA action that bags, brooms, shovels, and pails used by sanitation workers "undoubtedly moved in interstate commerce to New York City"); *Boekemeier v. Fourth Universalist Soc'y*, 86 F. Supp. 2d 280, 285 (S.D.N.Y. 2000) ("Plaintiff's handling of janitorial goods that have moved in commerce is . . . sufficient."). Indeed, courts must "draw all reasonable inferences in [the plaintiff's] favor," *Finkel*, 577 F.3d at 84, and have in this context "noted that 'virtually every enterprise in the nation doing the requisite dollar volume of business is covered by the FLSA,'" *Sanchez v. Ms. Wine Shop Inc.*, 2022 U.S. Dist. LEXIS 208268, at *9 (E.D.N.Y. Nov. 15, 2022), *report and recommendation adopted*, 643 F. Supp. 3d 355 (E.D.N.Y. Nov. 30, 2022) (quoting *Archie v. Grand Cent. P'ship, Inc.*, 997 F. Supp. 504, 530 (S.D.N.Y. 1998) (quotation marks omitted)). Accordingly, the Court finds that Plaintiff's allegations are sufficient to establish that Defendant Chuqui Builders is an employer subject to the FLSA.

Under the FLSA, an "employer" also includes "any person acting directly or indirectly in the interest of an employer in relation to an employee[.]" 29 U.S.C. § 203(d). "Person" means "an individual, partnership, association, corporation, business trust, legal representative, or any organized group of persons." 29 U.S.C. § 203(a). And to "employ" means "to suffer or permit to

7

work." 29 U.S.C. § 203(g). Therefore, an individual may also be held liable as an employer under the FLSA if they exercise "operational control," *see Irizarry v. Catsimatidis*, 722 F.3d 99, 110 (2d Cir. 2013), and any individual employer may be held jointly and severally liable to the plaintiff along with any corporate employer, *Moon v. Kwon*, 248 F. Supp. 2d 201, 237 (S.D.N.Y. 2002). Plaintiff alleges that Defendant Manuel Chuqui "is the owner and manager [o]f [Defendant] Chuqui Builders []," with the power to hire and fire employees, supervise and control employees' work schedules and conditions of employment, determine the rate and method of payment of employees, and maintain employment records. (Dkt. No. 1, ¶¶ 4, 9). Accordingly, the Court finds that Plaintiff's allegations are also sufficient to establish that Defendant Manuel Chuqui is an employer subject to the FLSA. Therefore, if the Court finds that Plaintiff is owed damages, Defendant Manuel Chuqui will be jointly and severally liable to Plaintiff along with Defendant Chuqui Builders.

Turning to the third requirement, the Second Circuit has noted "that in order to state a plausible FLSA overtime claim, a plaintiff must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours." *Lundy v. Catholic Health Sys. of Long Island, Inc.*, 711 F.3d 106, 114 (2d Cir. 2013) (citing 29 U.S.C. § 207(a)(1)). It has also noted that "[d]etermining whether a plausible claim has been plead is 'a context-specific task that requires the reviewing court to draw on its own judicial experience and common sense.'" *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 663–64 (2009)).

Here, Plaintiff alleges that during his employment with Defendants he typically worked "72–82 hours per week." (Dkt. No. 1, ¶ 13). Moreover, the Complaint lists twenty-six weeks in which he allegedly worked seventy-eight hours—thirty-eight hours over the forty-hour threshold—without being paid overtime wages. (*Id.* at 8). Therefore, based on the alleged facts,

the Court finds that Plaintiff has sufficiently stated a claim against Defendants for violations of the FLSA's overtime wage provisions.

"In light of the fact that '[t]he relevant portions of [the NYLL] do not diverge from the requirements of the FLSA,' [the Court's] conclusions [ ] about the FLSA allegations 'apply equally to [the NYLL] [overtime wage] claims.'" *DeJesus*, 726 F.3d at 89 n.5 (internal citations omitted) (first and last alterations in original); *see Nakahata v. N.Y.-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 200 (2d Cir. 2013) ("The FLSA mandates that an employee engaged in interstate commerce be compensated at a rate of no less than one and one-half times the regular rate of pay for any hours worked in excess of forty per week[;] . . . the NYLL adopts this same standard."). Because Plaintiff stated a claim against Defendants for violations of the FLSA's overtime wage provisions, the Complaint is likewise sufficient to state a claim against Defendants for violations of the NYLL's overtime wage provisions.

### 2.  Failure to Issue Wage Notices and Statements (Third and Fourth Causes of Action)

Plaintiff also claims Defendants failed to issue wage notices and statements in violation of the NYLL. (Dkt. No. 1). Under the NYLL, employees can recover damages of fifty dollars for each work day that a wage notice violation occurs or continues to occur, up to a statutory maximum of $5,000, and $250 for each work day that a wage statement violation occurs or continues to occur, up to a statutory maximum of $5,000. *See* N.Y. Lab. Law § 198(1-b), (1-d); *see also Canaveral v. Midtown Diner NYC, Inc.*, No. 19-cv-635, 2019 WL 4195194, at *5, 2019 U.S. Dist. LEXIS 151080, at *12 (S.D.N.Y. Sept. 5, 2019), *report and recommendation adopted*, No. 19-cv-635, 2019 WL 6170058, 2019 U.S. Dist. LEXIS 200899 (S.D.N.Y. Nov. 19, 2019). However, following "the Supreme Court's decision in *TransUnion*, courts in this Circuit have held that plaintiffs lack standing to bring wage notice and statement claims under the NYLL

9

absent any concrete, downstream consequences of the recordkeeping violation." *Chen v. Lilis 200 W. 57th Corp.*, No. 19-cv-7654, 2023 WL 2388728, at *8, 2023 U.S. Dist. LEXIS 38163, at *18 (S.D.N.Y. Mar. 7, 2023) (referring to *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2205 (2021)). Here, Plaintiff merely states that Defendants failed to issue wage notices and statements in violation of the NYLL without alleging any resulting harm. (Dkt. No. 1, at 4–5). Accordingly, Plaintiff's claims for failure to issue wage notices and statements are dismissed for lack of standing. *See Neor v. Acacia Network, Inc.*, No. 22-cv-4814, 2023 WL 1797267, at *4, 2023 U.S. Dist. LEXIS 20754, at *10–11 (S.D.N.Y. Feb. 7, 2023) (concluding that plaintiffs lacked standing to bring wage notice and statement claims under the NYLL because their complaint did not "allege any harm stemming from a lack of accurate wage notices or statements.").

**C.     Damages**

"[I]t is well established that '[w]hile a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages.'" *Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors Inc.*, 699 F.3d 230, 234 (2d Cir. 2012). On a motion for default judgment, a court must "conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151,155 (2d Cir. 1999) (citing *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc.*, 109 F.3d 105, 111 (2d Cir. 1997)). "There must be an evidentiary basis for the damages sought by plaintiff, and a district court may determine if there is sufficient evidence . . . based . . . upon a review of affidavits and documentary evidence." *Cement & Concrete Workers*, 699 F.3d at 234 (citing Fed. R. Civ. P. 55(b)(2)). A hearing is not necessary where the record contains detailed affidavits and documentary evidence that enables the Court to evaluate the proposed sum and determine an award of damages. *See Tamarin v. Adam Caterers, Inc.*, 13 F.3d 51, 54 (2d Cir.

1993) ("Rule 55(b)(2) and relevant case law give district judges much discretion in determining when it is 'necessary and proper' to hold an inquest on damages.").

Plaintiff seeks (1) compensatory damages for unpaid overtime wages under both the FLSA and NYLL; (2) liquidated damages under both the FLSA and NYLL; (3) pre- and post-judgment interest; and (4) attorney's fees and costs. (Dkt. No. 1, at 6). "Where there is liability under both the FLSA and NYLL, a plaintiff recovers 'under the statute which provides the greatest amount of damages.'" *Marvici v. Roche Facilities Maint. LLC*, No. 21-cv-4259, 2023 WL 5810500, at *5, 2023 U.S. Dist. LEXIS 158994, at *11 (S.D.N.Y. Sept. 8, 2023) (quoting *Almanzar v. 1342 St. Nicholas Ave. Rest. Corp.*, No. 14-cv-7850, 2016 WL 8650464, at *7, 2016 U.S. Dist. LEXIS 155116, at *19–20 (S.D.N.Y. Nov. 7, 2016), *report and recommendation adopted*, 2017 WL 1194682, 2017 U.S. Dist. LEXIS 47894 (Mar. 30, 2017)), *report and recommendation adopted*, 2023 WL 6648902, 2023 U.S. Dist. LEXIS 183893 (Oct. 12, 2023). The NYLL provides for greater relief and therefore applies to the calculations of damages in this case.

    **1.    Compensatory Damages**

The FLSA and NYLL both entitle employees to 150 percent of their regular rate for each hour worked during a week in excess of forty. *See* 29 U.S.C. § 207(a)(2)(C); N.Y. Lab. L. § 232. Where an employee has been paid his or her regular rate for overtime hours, the appropriate measure of overtime damages is fifty percent of the regular rate. *See Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 90 (E.D.N.Y. 2012) (calculating overtime damages at fifty percent of the regular rate per hour worked in excess of forty). However, "[e]ven if the plaintiffs are owed overtime wages in violation of both the FLSA and the NYLL, they are not entitled to recover double damages." *Martinez v. Alimentos Saludables Corp.*, No. 16-cv-1997, 2017 WL 5033650,

11

at *15, 2017 U.S. Dist. LEXIS 156657, at *39 (E.D.N.Y. Sept. 22, 2017), *report and recommendation adopted*, 2017 U.S. Dist. LEXIS 174714 (E.D.N.Y. Oct. 18, 2017).

According to the Complaint, Plaintiff worked a total of 988 overtime hours between the week of March 20, 2022, and the week of September 11, 2022, at a regular rate of $20 per hour. (Dkt. No. 1, at 8).[2] Plaintiff's unpaid overtime wages therefore amount to $10 per overtime hour—$9,880 total. The table below summarizes the Court's findings with respect to overtime damages:

| Number of Overtime Hours | Regular Rate (per hour) | Unpaid Overtime Rate (per hour) | Total Unpaid Overtime Wages |
|---|---|---|---|
| 988 | $20 | $10 | $9,880 |

Consequently, the Court finds that Defendants are liable to Plaintiff for unpaid overtime wages in the amount of $9,880.

### 2. Liquidated Damages

The FLSA and NYLL both provide for payment of "an additional equal amount as liquidated damages." 29 U.S.C. § 216(b); N.Y. Lab. Law § 663(1). However, "[l]iquidated damages are not a penalty exacted by the law, but rather compensation to the employee occasioned by the delay in receiving wages due caused by the employer's violation of the FLSA." *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 142 (2d Cir. 1999) (citing *Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572, 583–84, (1942)). Therefore, the Second Circuit has held that an award of liquidated damages under one satisfies the provision for liquidated damages in the other. *See Chowdhury v. Hamza Express Food Corp.*, 666 F. App'x 59, 61 (2d Cir. 2016); *see also Pest v. Bridal Works of New York, Inc.*, 268 F. Supp. 3d 413, 436 (E.D.N.Y. 2017) ("Courts in this circuit have since relied on [*Chowdhury*] to disfavor an overlapping award

---

[2] Elsewhere in the Complaint, Plaintiff refers to a regular rate of $260 per day. (*Id.* ¶ 16). $260 per day is the equivalent of $20 per hour if, as the Court assumes to be the case, Plaintiff worked thirteen hours per day, six days per week.

12

of liquidated damages under both the FLSA and [] NYLL for the same period of time.") (collecting cases).

"Courts have discretion to deny an award of liquidated damages where the employer shows that, despite the failure to pay appropriate wages, the employer acted in subjective 'good faith' and had objectively 'reasonable grounds' for believing that [their conduct] did not violate the FLSA." *Herman*, 172 F.3d at 142. But the Second Circuit has described the employer's burden to establish good faith as "a difficult one, with double damages being the norm and single damages the exception." *Id.* (citing *Reich v. S. New England Telecomms. Corp.*, 121 F.3d 58, 71 (2d Cir. 1997)); *see also Rojas v. Splendor Landscape Designs Ltd.*, 268 F. Supp. 3d 405, 411 (E.D.N.Y. 2017) ("[A]n award of liquidated damages is typically presumed under the FLSA."). Indeed, defaulting defendants "obviously [make] no showing of good faith." *Schalaudek v. Chateau 20th St. LLC*, No. 16-cv-11, 2017 WL 729544, at *10, 2017 U.S. Dist. LEXIS 26272, at *27 (S.D.N.Y. Feb. 24, 2017) (quoting *Xochimitl v. Pita Grill of Hell's Kitchen, Inc.*, No. 14-cv-10234, 2016 WL 4704917, at *15, 2016 U.S. Dist. LEXIS 121259, at *47 (S.D.N.Y. Sept. 8, 2016), *report and recommendation adopted*, 2016 WL 6879258, 2016 U.S. Dist. LEXIS 161123 (S.D.N.Y. Nov. 21, 2016)), *report and recommendation adopted as modified*, 2017 WL 1968677, 2017 U.S. Dist. LEXIS 53115 (May 11, 2017).

Here, Plaintiff alleges that Defendants' failure to pay Plaintiff the statutorily mandated overtime wage was knowing and willful, (Dkt. No. 1, ¶¶ 19, 25), and the defaulting Defendants have not made any showing of good faith. Accordingly, the Court finds liquidated damages in the amount of $9,880 appropriate in this case.

### 3. Pre-Judgment Interest

The NYLL—but not the FLSA—"permits the award of both liquidated damages and pre-judgment interest." *Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 48 (E.D.N.Y.

13

2015). Indeed, "courts typically award prejudgment interest on damages for NYLL violations." *Pineda v. Frisolino, Inc.*, No. 15-cv-3774, 2017 WL 3835882, at *13, 2017 U.S. Dist. LEXIS 139735, at *38 (S.D.N.Y. Aug. 29, 2017) (quoting *McLean v. Garage Mgmt. Corp.*, No. 09-cv-9325, 2012 WL 1358739, at *10, 2012 U.S. Dist. LEXIS 55425, at *26 (S.D.N.Y. Apr. 19, 2012)). That said, pre-judgment interest is available only for compensatory damages, not liquidated damages. *See Salustio v. 106 Columbia Deli Corp.*, 264 F. Supp. 3d 540, 557 (S.D.N.Y. 2017) (collecting cases).

Under New York law, pre-judgment interest rate is set at nine percent per year. N.Y. C.P.L.R. § 5004. Where, as here, violations of the NYLL occur over an extended period, courts calculate pre-judgment interest from a "single reasonable intermediate date." N.Y. C.P.L.R. § 5001(b); *see, e.g., Wicaksono v. XYV 48 Corp.*, No. 10-cv-3635, 2011 WL 2022644, at *9, 2011 U.S. Dist. LEXIS 55771, at *26 (S.D.N.Y. May 2, 2011) (finding that "[t]he plaintiffs have calculated prejudgment interest from the midway point of each plaintiff's employment, which is a reasonable approach").

For Plaintiff, a reasonable intermediate date is June 14, 2022, the approximate midpoint in his employment with Defendants. A nine percent interest rate should therefore be applied to the balance of $9,880 (the sum of unpaid overtime wages) from June 14, 2022, until the date that a final judgment is entered.

### 4. Automatic Increase

The NYLL provides that "if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent." N.Y. Lab. Law § 198(4). This "increase applies only to damages awarded under state law." *Rosa v. La Oficina of Queens, Inc.,* No. 18-cv-6915, 2023 WL

2745214, at *14, 2023 U.S. Dist. LEXIS 46930, at *35 (E.D.N.Y. Mar. 17, 2023) (citing cases), *report and recommendation adopted*, 2023 WL 2736237, 2023 U.S. Dist. LEXIS 56781 (Mar. 31, 2023). Consequently, "if Defendants fail to satisfy the judgment within the stated deadlines, then Plaintiff is entitled to a fifteen percent increase in the amount of damages owed to him" under the NYLL. *Id.*

### 5. Post-Judgement Interest

Post-judgment interest is governed by federal statute under which "[i]nterest [is] allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a). "Post-judgment interest is calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of judgment." *Morales v. Mw Bronx, Inc.*, No. 15-cv-6296, 2016 WL 4084159, at *11, 2016 U.S. Dist. LEXIS 100422, at *31 (S.D.N.Y. Aug. 1, 2016) (citing 28 U.S.C. § 1961(a)). Plaintiff is therefore "entitled to post-judgment interest on all sums awarded, including attorney's fees and costs, commencing when the Clerk of the Court enters judgment until the date of payment." *Canaveral*, 2019 WL 4195194, at *7, 2019 U.S. Dist. LEXIS 151080, at *14.

### 6. Attorney's Fees and Costs

Attorney's fees and costs are recoverable under both the FLSA and NYLL. *See* 29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."); N.Y. Lab. Law § 215(2)(a) (providing for "costs and reasonable attorney's fees"). Here, Plaintiff seeks $2,300 in attorney's fees and $626 in costs, for a total of $2,926. (Dkt. No. 1, at 6; Dkt. No. 12-2, at 2).

In determining the reasonableness of requested attorney's fees, "the Court begins by using the 'lodestar method' to calculate a 'presumptively reasonable fee.'" *McGlynn v. Cools, Inc.*, No. 19-cv-3520, 2020 WL 6561658, at *4, 2020 U.S. Dist. LEXIS 116761, at *10–11 (S.D.N.Y. July 1, 2020) (quoting *Millea v. Metro-N. R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011)). The lodestar is "the product of a reasonable hourly rate and the reasonable number of hours required by the case." *Id.* In the Second Circuit, there is a presumption in favor of the "forum rule," which requires courts to employ "the hourly rates . . . in the district in which the reviewing courts sits in calculating the presumptively reasonable fee." *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009) (quotation omitted). Courts may, after the initial calculation of the presumptively reasonable fee, adjust the total when it "does not adequately take into account a factor that may properly be considered in determining a reasonable fee." *Lilly v. City of New York*, 934 F.3d 222, 230 (2d Cir. 2019) (citing *Millea*, 658 F.3d at 167). The "fee applicant has the burden of showing by satisfactory evidence—in addition to the attorney's own affidavits—that the requested hourly rates are the prevailing market rates." *Farbotko v. Clinton Cnty. of New York*, 433 F.3d 204, 209 (2d Cir. 2005) (quotation omitted).

Here, Plaintiff's counsel submitted a sworn declaration—supported by billing records—asserting that he spent 5.75 hours on the case. (Dkt. No. 12-2, at 2). In determining a reasonable fee, "the district court should exclude . . . hours that were not reasonably expended, including hours that are excessive, redundant, or otherwise unnecessary." *Osterweil v. Bartlett*, 92 F. Supp. 3d 14, 28 (N.D.N.Y. 2015) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1933) (internal quotations omitted)). "In excluding hours that were not reasonably expended, the court has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application." *Id.* (citing *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149,

173 (2d Cir. 1998) (internal quotations omitted)). Plaintiff's counsel's records include separate entries for each task detailing the time spent and work completed. (Dkt. No. 12-2, at 2). One entry—for 0.15 hours—is duplicative, but none of the other entries appear to be excessive, redundant, or otherwise unnecessary. (*Id.*). Accordingly, the Court will reduce Plaintiff's counsel's hours by 0.15 hours but otherwise accept them as reasonable.

Plaintiff's counsel requests an hourly rate of $400, (*id.*), which he alleges is "reasonable and comparable to rates charged by attorneys and staff of a comparative level, serving the same legal market." (*Id.* ¶ 4). Given his Chicago address, (*id.*, at 3), it is not altogether clear what "legal market" Plaintiff's counsel is referring to. But, in any event, under the forum rule, the Court only considers the presumptively reasonable rate in the Northern District of New York. [3] In *Broad. Music, Inc. v. DeJohn's on Lark, Inc.*, the Court held that the requested hourly rate of $450 was "considerably higher than what is usually expected in the Northern District of New York." No. 19-cv-637, 2020 WL 1986903, at *7, 2020 U.S. Dist. LEXIS 73262, at *17 (N.D.N.Y. Apr. 27, 2020) (citing *Broad Music, Inc. v. Rider Rock's Holding, LLC*, No. 16-cv-1398, 2017 WL 2992498, at *3, 2017 U.S. Dist. LEXIS 109383, at *7 (N.D.N.Y. July 14, 2017)). "A review of cases in this District indicates that the following hourly rates (or rate ranges) are reasonable: $275–$350 for experienced partners; $165–$200 for junior associates; and $90 for paralegals." *See Johnson v. Mauro*, 16-cv-622, 2019 WL 5842765, at *5, 2019 U.S. Dist. LEXIS 193661, at *12–13 (N.D.N.Y. Nov. 7, 2019) (collecting cases).

---

[3] "[W]hen faced with a request for an award of higher out-of-district rates, a district court must first apply a presumption in favor of application of the forum rule." *Simmons*, 575 F.3d at 175. To "overcome that presumption, a litigant must persuasively establish that a reasonable client would have selected out-of-district counsel because doing so would likely (not just possibly) produce a substantially better net result." *Id.* Here, although Plaintiff's counsel is apparently based in Chicago, Plaintiff's counsel does not state that he is seeking higher out-of-district rates or suggest that a reasonable client would have selected out-of-district counsel. Accordingly, the Court will assume Plaintiff's counsel intended to specify that his $400 hourly rate is reasonable and comparable to rates charged by attorneys in the Northern District of New York.

As a result, the Court finds that the $400 hourly rate requested by Plaintiff's counsel is somewhat excessive, particularly considering his failure to detail his level of skill and experience beyond simply describing himself as the "primary attorney responsible for handling this matter." (Dkt. No. 12-2, ¶ 2); *see Car Freshner Corp. v. Scented Promotions, LLC*, No. 19-cv-1158, 2020 WL 5757475, at *8, 2020 U.S. Dist. LEXIS 177567, at *27 (N.D.N.Y. Sept. 28, 2020) (rejecting Plaintiff's request for a rate of $420–$440 for work performed by an attorney with "more than 25 years of litigation experience" and finding his work to be subject to a rate of $325). Thus, the Court will reduce the hourly rate to $300 for Plaintiff's counsel. Based on the reduced hours worked and hourly rate, the Court finds that Plaintiff is entitled to a total of $1,680 in attorney's fees.

Lastly, Plaintiff seeks $626 in costs—$402 for the Complaint filing fee and $224 for service of process on Defendants. (Dkt. No. 12-2, at 2). As mentioned, costs are recoverable under both the FLSA and NYLL. *See* 29 U.S.C. § 216(b); N.Y. Lab. Law § 215(2)(a). Plaintiff's billing records and the docket report substantiate these costs, (Dkt. No. 1; Dkt. No. 12-2, at 2), and the Court finds them to be reasonable. Accordingly, the Court finds that Plaintiff is entitled to attorney's fees and costs in the total amount of $2,306.

## IV.   CONCLUSION

For these reasons, it is hereby

**ORDERED** that Plaintiff's Motion for Default Judgment (Dkt. No. 12) is **GRANTED in part**; and it is further

**ORDERED** that Plaintiff's request for default judgment is **GRANTED** with respect to Plaintiff's claims for failure to pay overtime wages (First and Second Causes of Action); and it is further

**ORDERED** that Defendants are jointly and severally liable for unpaid overtime wages in the amount of $9,880; and it is further

**ORDERED** that Defendants are jointly and severally liable for liquidated damages in the amount of $9,880; and it is further

**ORDERED** that Defendants are jointly and severally liable for attorney's fees and costs in the amount of $2,306; and it is further

**ORDERED** that Defendants are jointly and severally liable for pre-judgment interest on the amount of $9,880, at a rate of nine percent per annum, running from June 14, 2022, to the date of this order—$1,241.63 total; and it is further

**ORDERED** that Defendants are jointly and severally liable for post-judgment interest on all money awards at the rate provided for by 28 U.S.C. § 1961(a); and it is further

**ORDERED** that Plaintiff's Complaint is **DISMISSED without prejudice** for lack of standing with respect to Plaintiff's claims for failure to issue wage notices and statements (Third and Fourth Causes of Action); and it is further

**ORDERED** that Plaintiff may file an amended complaint **within thirty (30) days of this Order**; and if Plaintiff fails to file an amended complaint within thirty (30) days of this Order, the Clerk of the Court is directed, without further order, to enter judgment against Defendants in the amount of $23,307.63.

**IT IS SO ORDERED.**

Dated: <u>November 6, 2023</u>
Syracuse, New York

Brenda K. Sannes
Chief U.S. District Judge